UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| SIRAJ IBRIHIM, <br> also known as ROBERT CAIN, <br><br> Plaintiff, <br><br> vs. <br><br> DIRECTOR/WARDEN SHELBY COUNTY <br> CORRECTIONS, ET AL., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 2:22-cv-02221-SHM-tmp |

**ORDER DISMISSING THE AMENDED COMPLAINT (ECF NOS. 44 & 45)
WITH PREJUDICE;
DENYING LEAVE TO AMEND;
NOTIFYING IBRIHIM OF THE COURT'S STRIKE RECOMMENDATION;
NOTIFYING IBRIHIM OF THE APPELLATE FILING FEE;
AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court for screening under the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, *et seq*. (the "PLRA") are the amended complaints filed by *pro se* Plaintiff Siraj Ibrihim pursuant to 42 U.S.C. § 1983. (ECF No. 44 at PageID 228-32 (filed on July 17, 2023); ECF No. 45 at PageID 234-38 (filed on August 4, 2023).) Ibrihim's amended claims filed on August 4, 2023 (ECF No. 45) are a photocopy of his amended claims filed on July 17, 2023 (ECF No. 44). (*See also* ECF No. 44 at PageID 232 (certificate of service dated June 23, 2023); ECF No. 45 at PageID 238 (certificate of service dated June 23, 2023).) The instant Order refers to Ibrihim's amended claims (ECF Nos. 44 & 45) as the "Amended Complaint." For the reasons explained below, the Amended Complaint (ECF Nos. 44 & 45) is **DISMISSED WITH PREJUDICE** and leave to amend is **DENIED**.

**I.       PROCEDURAL BACKGROUND**

On April 7, 2022, Ibrihim filed a *pro se* civil complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) When Ibrihim filed the complaint, he was incarcerated at the Shelby County Correctional Center (the "SCCC"), in Memphis, Tennessee. (ECF No. 1-1 at PageID 6.) On May 4, 2022, the Court granted leave to proceed *in forma pauperis*. (ECF No. 8.) Ibrihim is now confined at the Tallahatchie County Correctional Facility (the "TCCF"), in Tutwiler, Mississippi. (ECF No. 36 at PageID 205; ECF No. 44 at PageID 228; ECF No. 45-1 at PageID 239.)

On October 27, 2022, the Court: (1) partially dismissed the Consolidated Complaint (ECF Nos. 1 & 13-16) with prejudice; (2) partially dismissed the Consolidated Complaint without prejudice; (3) granted leave to amend the claims dismissed without prejudice; and (4) denied all pending motions (ECF Nos. 5-6, 9-15, 17-18 & 20-24). (ECF No. 27 at PageID 128-53 (the "Screening Order").) Addressing the screening of the claims in the Consolidated Complaint, the Court:

> (1) dismissed with prejudice Ibrihim's:
> (a) claims against (i) the Warden of the Federal Medical Center Butner, North Carolina, (ii) the United States Marshal Service, (iii) the Federal Bureau of Prisons, (iv) Janika White, Esquire, and (v) Needum Germany, Esquire; and
> (b) negligence claim; and
>
> (2) dismissed without prejudice:
> (a) Ibrihim's claims against (i) Shelby County and (ii) the Director/Warden of Shelby County Corrections (the "SCCC Warden") in his official capacity;
> (b) Ibrihim's claim of inadequate prison grievance process against the SCCC Warden in the Warden's individual capacity;
> (c) Ibrihim's retaliation claim against the SCCC Warden in his individual capacity;
> (d) Ibrihim's Eighth Amendment conditions of confinement claim against the SCCC Warden in his individual capacity;
> (e) Ibrihim's deprivation of medical care claim against the SCCC Warden in his individual capacity; and
> (f) Ibrihim's claim of failure to receive legal and non-legal mail on a daily basis.

(*Id*. at PageID 133-53.)

After the Court had granted two extensions of time for Ibrihim to amend (ECF Nos. 30 & 43), Ibrihim filed amended claims on July 17, 2023 (ECF No. 44) and a photocopy of his amended claims on August 4, 2023 (ECF No. 45). In the Amended Complaint, Ibrihim sues (1) Shelby County, Tennessee (the "County") and (2) the SCCC Warden. (ECF No. 44 at PageID 228; ECF No. 45 at PageID 234.) In the Amended Complaint, Ibrihim alleges claims of:

> (1) violation of the Eighth Amendment's prohibition of cruel and unusual punishment against the County and the SCCC Warden in his official capacity (ECF No. 44 at PageID 228-29; ECF No. 45 at PageID 234-35);
>
> (2) inadequate prison grievance process against the SCCC Warden in his individual capacity (ECF No. 44 at PageID 229; ECF No. 45 at PageID235);
>
> (3) unconstitutional conditions of confinement against the SCCC Warden in his individual capacity (ECF No. 44 at PageID 229-30; ECF No. 45 at PageID 235-36);
>
> (4) deprivation of medical care against the SCCC Warden in his individual capacity (ECF No. 44 at PageID 230; ECF No. 45 at PageID 236); and
>
> (5) failure to receive legal and non-legal mail on a daily basis (ECF No. 44 at PageID 230-31; ECF No. 45 at PageID 236-37).

In the Amended Complaint, Ibrihim does not specify the relief he seeks. (*See* ECF No. 44 at PageID 228-32; ECF No. 45 at PageID 234-38.)[1]

For the reasons explained below, the Amended Complaint (ECF Nos. 44 & 45) is **DISMISSED WITH PREJUDICE** for failure to state a claim to relief, *see* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1)-(2), and leave to amend is **DENIED**.

---

[1] In the Consolidated Complaint, Ibrihim sought injunctive relief: (1) a recommendation for Ibrihim's compassionate release from the FMC Fort Worth (ECF No. 1 at PageID 4); (2) an injunction against "retaliat[ion] against [Ibrihim] in any way, shape, or fashion" (*id*.); (3) Ibrihim's placement "in a medically safe environment and not in isolation" (*id*.); (4) an injunction against "infringe[ment] on [Ibrihim's] rights in any way" (*id*.); (5) delivery to Ibrihim of his sleep apnea machine and heart monitor from the Memphis Veterans Hospital (ECF No. 16 at PageID 59); (6) a copy of Ibrihim's grievance history file in the Shelby County Corrections Management System (*id*.); and (7) compassionate release to home confinement with ankle monitors, until the conclusion of Ibrihim's criminal case and the instant case. (*Id*.)

3

II.     **LEGAL STANDARD; REQUIREMENTS TO STATE A CLAIM UNDER § 1983**

The legal standard for screening claims under § 1983 pursuant to the PLRA, and the requirements to state a claim under § 1983, are set forth in the Screening Order and are not restated here. (*See* ECF No. 27 at PageID 131-33.)

III.    **ANALYSIS**

   A. **Claim Of Violation Of The Eight Amendment Against (1) The SCCC Warden In His Official Capacity And (2) The County**

In the Amended Complaint, Ibrihim alleges that, although he "fully stated all his medical conditions at medical intake" and "notified jail staff of his medically fragile state" at the SCCC, he "was placed in a dorm next to a clearly COVID-19 infected prisoner[,] therefore exposing and infecting Ibrihim with COVID-19 in violation of the [E]ighth [A]mendment prohibition against cruel and unusual punishment." (ECF No. 44 at PageID 228-29; ECF No. 45 at PageID 234-35.) Ibrihim alleges he was "told either take the bunk next to the COVID-infected prisoner or go to segregation by the pod officer on January 12, 2022," because "the aforementioned where [sic] the rules of the Administration." (*Id*.)

Ibrihim's claims of violation of the Eighth Amendment against the SCCC Warden in his official capacity are treated as claims against the SCCC Warden's employer -- *i.e.*, the County. *See Jones v. Union Cnty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). Shelby County may be held liable only if Ibrihim's injuries were sustained pursuant to an unconstitutional custom or policy of the County. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*. 8 F.3d 358, 364 (6th

4

Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

"The substantive bar for proving municipal custom or practice is quite high." *Beaver v. Macomb Cnty.*, No. 2:21-cv-10750, 2025 WL 975468, at *22 (E.D. Mich. Mar. 31, 2025) (citing *Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014) ("[As to] establishing what constitutes a widespread custom or practice, it is clear that a single incident -- or even three incidents -- do not suffice")). Courts have identified at least four avenues a plaintiff may use in establishing municipal liability:

> (1) The municipality's legislative enactments or official agency policies. "Official policy" often refers to formal rules or understandings -- often but not always committed to writing -- that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time;
> (2) Actions taken by officials with final decision-making authority;
> (3) A policy of inadequate training or supervision; or
> (4) A custom of tolerance or acquiescence of federal rights violations.

*Stone v. City of Grand Junction, Tennessee*, 765 F. Supp. 2d 1060, 1072 (W.D. Tenn. 2011) (citing *Spears v. Ruth,* 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005))). Ibrihim's focus in this case is on the fourth avenue: *i.e.*, custom of tolerance. (*See* ECF No. 44 at PageID 229; ECF No. 45 at PageID 235.)

"A municipality can be shown to have a 'custom' causing constitutional violations, even if that custom was not formally sanctioned, provided that the plaintiff offers proof of policymaking officials' knowledge and acquiescence to the established practice." *Id.* (citing *Monell,* 436 U.S. at 690–91). A custom must be a "widespread practice that ... is so permanent and well settled as to

5

constitute a custom or usage with the force of law." *McClendon v. City of Detroit,* 255 F. App'x 980, 982 (6th Cir. 2007) (citing *Praprotnik,* 485 U.S. at 127). "In turn, the notion of 'law' must include deeply embedded traditional ways of carrying out state policy." *Cash v. Hamilton Cnty. Dep't of Adult Prob.,* 388 F.3d 539, 543 (6th Cir. 2004) (quoting *Doe v. Claiborne Cnty., Tenn. by & through Claiborne Cnty. Bd. of Educ.,* 103 F.3d 495, 507–08 (6th Cir. 1996)), *cert. denied,* 546 U.S. 927 & 546 U.S. 998 (2005).

To prevail on a "tolerance or acquiescence" theory, a plaintiff must demonstrate, by a preponderance of the evidence, that: (1) "there was a clear and persistent pattern of illegal activity"; (2) "the [municipality] had notice of it"; (3) "the [municipality] tacitly approved the unconstitutional activity such that its deliberate indifference amounts to an official policy of inaction"; and (4) "this custom or policy of inaction was the moving force behind the constitutional deprivation." *Aureus Holdings, Ltd. v. Detroit City,* 303 F. App'x 265, 270 (6th Cir. 2008) (citing *Thomas,* 398 F.3d at 429), *cert. denied,* 556 U.S. 1236 (2009), *reh'g denied* 557 U.S. 949 (2009); *see also Beaver,* 2025 WL 975468, at *22 ("To prevail on a widespread practice or custom claim, a plaintiff must show that similar unconstitutional acts have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct. That is, a pattern requires 'sufficiently numerous prior incidents,' not '[i]solated instances.' A pattern also requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question'") (citations omitted). Plaintiffs bear a heavy burden to establish municipal liability. *Thomas,* 398 F.3d at 433. Ibrihim fails to meet his burden.

First, Ibrihim does not allege facts in the Amended Complaint demonstrating "a clear and persistent pattern" in the County's application of the "rules" Ibrihim vaguely alleges. (*See* ECF No. 44 at PageID 229; ECF No. 45 at PageID 235.) For the purposes of screening Ibrihim's claims,

6

the Amended Complaint is construed to allege that the SCCC's administration had "rules" about segregating inmates who refused cell assignments. (*See id.*) Ibrihim, however, does not allege facts demonstrating a clear and persistent pattern of the County's enforcement of those "rules" such that unconstitutional cell assignments during the COVID-19 pandemic were "so widespread, permanent, and well-settled as to have the force of law" and constituted a "deeply embedded traditional way[] of carrying out state policy" at the SCCC. *See Cash,* 388 F.3d at 543; *McClendon,* 255 F. App'x at 982. Ibrihim alleges only one incident of enforcement of the "rules" to which he vaguely refers: *i.e.*, the alleged incident on January 12, 2022 (*see* ECF No. 44 at PageID 229; ECF No. 45 at PageID 235). Ibrihim's allegations about the County's enforcement of the "rules" he challenges do not go beyond the facts of Ibrihim's own case. *See Thomas*, 398 F.3d at 433-34 (plaintiff's evidence of a pattern was based on the facts of his own case, failing to show "several separate instances of the alleged rights violation"); *see also Stone*, 765 F. Supp. 2d at 1073 (three incidents in a two-month period were insufficient for *Monell* liability). At most, Ibrihim's allegations suggest that the SCCC and the County faced challenges addressing limited SCCC facility space, finite facility resources, and limited personal protective equipment during the global COVID-19 pandemic. As courts have noted, the Eighth Amendment does not require perfection on the part of prison officials. *See*, *e.g.*, *United States v. Cato*, No. 14-315-01, 2020 WL 4193055, at *1 n.1 (E.D. Pa. July 21, 2020) (internal citations omitted).

Second, Ibrihim does not allege facts demonstrating that the "rules" (ECF No. 44 at PageID 229; ECF No. 45 at PageID 235) were "the moving force behind the [alleged] constitutional deprivation." *See Aureus Holdings,* 303 F. App'x at 270. Ibrihim alleges that he was too "medically fragile" to "bunk next to the COVID-infected prisoner" (ECF No. 44 at PageID 229), but Ibrihim acknowledges that he was given the option to "go to segregation." (*Id.*) That Ibrihim had a choice to socially distance from COVID-infected inmates undercuts his contention that the

7

County and the SCCC Warden were deliberately indifferent to Ibrihim's unspecified "medical condition." (ECF No. 44 at PageID 228; ECF No. 45 at PageID 234.)

Ibrihim's generalized allegation that, on January 12, 2022, the County had "rules" requiring Ibrihim to "bunk next to the COVID-infected prisoner or go to segregation" (*id*.) is insufficiently factual to demonstrate an unconstitutional policy or custom that deprived Ibrihim of his constitutional rights.[2] Ibrihim's claim of cruel and unusual punishment in violation of the Eighth Amendment against the County and the SCCC Warden in his official capacity fails. Ibrihim has already amended his allegations. (*See* ECF Nos. 27, 44 & 45.) His Eight Amendment claim of cruel and unusual punishment against the County and the SCCC Warden in his official capacity is **DISMISSED WITH PREJUDICE**.

### B. Claim Of Inadequate Prison Grievance Process Against The SCCC Warden In His Individual Capacity

In the Amended Complaint, Ibrihim alleges that "Prison Rape Elimination Act compliance was non-existent at the time of Ibrihim's assault in March 2022" and that he was "deni[ed] access to the Offender Management system" when he "tried to report his assault." (ECF No. 44 at PageID 229; ECF No. 45 at PageID 235.) Ibrihim's allegations are construed as a claim of inadequate prison grievance process. That claim is without merit.

Prisoners do not have a constitutional right to a prison grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that the plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim). "There is no inherent constitutional right to an effective prison grievance procedure." *LaFlame*, 3 F. App'x at 348 (citing *Antonelli v. Sheahan*,

---

[2] Ibrihim fails to demonstrate (1) "a clear and persistent pattern of illegal activity" that (2) "was the moving force behind the constitutional deprivation," *see Aureus Holdings*, 303 F. App'x at 270. The Court need not consider whether (3) the County had notice of the pattern and (4) "tacitly approved the [alleged] unconstitutional activity." *See id*.

81 F.3d 1422, 1430 (7th Cir. 1996)).  Prisoners have a First Amendment right to file grievances against prison officials, but prisoners have no similar right to an investigation of their allegations.  *See Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003) (affirming that inmate did not state a claim that deputy warden "had failed to properly investigate his grievance"); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (affirming denial of inmate's claim that prison officials failed to investigate his grievances properly because there is no "federally protected liberty interest" in a resolution or investigation of grievances).

Ibrihim vaguely alleges that the supposed "denial of access to the Offender Management system is a deliberate attempt to derail any civil action that Ibrihim decides to pursue." (ECF No. 44 at PageID 229; ECF No. 45 at PageID 235.)  Ibrihim does not allege facts demonstrating that the conduct described in the Amended Complaint, in fact, adversely affected Ibrihim's "ability to bring his claim before any court."  *See Coleman v. Governor of Michigan*, No. 09-1139, 413 F. App'x 866, 874-875 (6th Cir. 2011) (citation omitted).  For example, Ibrihim does not: describe the "Offender Management system"; explain how it relates to his pursuit of a civil lawsuit; or allege that he was unable to pursue a specific civil law claim because he was denied access to the "Offender Management" system.  (*See id.*)

Because a § 1983 claim cannot be premised on contentions that a prison's grievance procedure was inadequate, *see Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007), Ibrihim's claim of inadequate grievance process is **DISMISSED WITH PREJUDICE** for failure to state a claim to relief as a matter of law.

### C. Claim Of Unconstitutional Conditions Of Confinement Against The SCCC Warden In His Individual Capacity

In the Amended Complaint, Ibrihim alleges he "notified [the] SCCC at medical intake" on January 12, 2022 that he "suffered from a low pulmonary function." (ECF No. 44 at PageID 229-

9

30; ECF No. 45 at PageID 235-36.)  Ibrihim alleges that, despite notifying the SCCC, "[s]ocial distancing[,] masks[,] [and] soap [were] not available to Ibrihim in January 2022." (*Id*.)  Ibrihim alleges he tested positive for COVID-19 on January 14, 2022, "just days after being placed next to a COVID-infected inmate" on an unspecified date.  (*Id*.)  Ibrihim alleges the "SCC[C] refused Ibrihim a mask from January 12 to January 16, 2023."  (*Id*.)  Ibrihim alleges the "SCC[C's] refusal of providing at least a mask to protect Ibrihim from contracting COVID-19 is inhumane."  (*Id*.)  The Court construes Ibrihim's allegations as an Eighth Amendment claim of unconstitutional conditions of confinement.  *See generally Wilson v. Seiter*, 501 U.S. 294 (1991).

Under the Eighth Amendment, prison officials must provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter and medical care.  *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Extreme deprivations are required to make out a conditions of confinement claim.  Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, ... only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotations and citations omitted).  The Sixth Circuit has explained the law governing conditions of confinement claims, as established in U.S. Supreme Court decisions:

> "In certain extreme circumstances, the totality itself may amount to an [E]ighth [A]mendment violation, but there still must exist a specific condition on which to base the [E]ighth [A]mendment claim.  We believe such conditions 'considered alone or in combination [with other conditions],' *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), must amount to a deprivation of 'life's necessities,' *id*., before a violation of the [E]ighth [A]mendment can be found." [*Walker v. Mintzes*,] 771 F.2d [920,] at 925 [(6th Cir. 1985)] … The Supreme Court's … opinion in *Wilson v. Seiter* [501 U.S. 294 (1991)] … holds that a specific deprivation of one or more identifiable human needs must be established in order to prove an Eighth

10

Amendment violation, and the plaintiff must show "a culpable state of mind on the part of [the defendant] prison officials." [*Id.* at 294, 302-03.]

*Berryman v. Johnson*, No. 88-1239 & 88-1280, 1991 WL 150808, at *9-10 (6th Cir. Aug. 6, 1991) (internal citations omitted). "It is thus settled that Eighth Amendment claims based on prison conditions have both an objective component (denial of … 'the minimal civilized measure of life's necessities'), and a subjective component ('deliberate indifference')." *Id.* at *10 (internal citations omitted.) *See also Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 928. A prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). The subjective component requires that jail officials acted with the requisite intent -- *i.e.*, had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03 (plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). A prison official must subjectively know of an excessive risk of harm to an inmate's health or safety and disregard that risk. *Farmer*, 511 U.S. at 837.

Even assuming, for purposes of screening the Amended Complaint, that the coronavirus and the risks attendant on contracting it are sufficiently serious for purposes of the Eighth Amendment's objective prong, Ibrihim fails to allege facts that satisfy the subjective prong. Ibrihim has not demonstrated that the SCCC Warden, or another § 1983 "person"[3], subjectively

---

[3] Section 1983 allows individuals to bring a federal lawsuit against a state actor or a person acting "under color of state law" who deprives an individual of any right, privilege or

11

knew of, and specifically disregarded, Ibrihim's "low pulmonary function" when he "requested a mask upon arrival on January 12, 2022." (ECF No. 44 at PageID 229-30; ECF No. 45 at PageID 235-36.) Ibrihim alleges only that: (1) he "notified [the] SCC[C]" about his low pulmonary function during medical intake; (2) "medical intake was aware of all [Ibrihim's] ailments"; and (3) the "SCC[C] refused Ibrihim a mask." (*Id*.) Under § 1983: (1) a jail such as the SCCC is not a "person" subject to suit. *Marbry v. Corr. Med. Serv.*, 238 F.3d 422 (table), No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000); and (2) collective liability -- *i.e.*, claims brought against groups of persons such as "the medical intake" department or unit -- is not permitted under § 1983. A group of people, such as "medical intake" of the SCCC, is not a "person" subject to suit pursuant to § 1983. *See, e.g., Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006); *Arty v. Wilson Cnty. Jail*, No. 19-cv-0309, 2019 WL 4748321, at *2 (M.D. Tenn. Sept. 30, 2019). Ibrihim alleges that "all of Ibrihim['s] ailments are clearly listed in his Veterans Hospital medical records that [the] SCC[C] is in possession of." (ECF No. 44 at PageID 230; ECF No. 45 at PageID 236.) That allegation does not demonstrate the SCCC Warden read Ibrihim's Veterans Hospital medical records and "subjectively kn[e]w of an excessive risk of harm to [Ibrihim's] health or safety and disregard[ed] that risk" by denying social distancing, soap, and a mask. *See Farmer*, 511 U.S. at 837. Also absent from the Amended Complaint are factual allegations that social distancing, soap, and masks were available at the SCCC on the dates relevant to Ibrihim's allegations or that those measures would have prevented Ibrihim from contracting COVID-19.

---

immunity secured by the Constitution or federal laws. *Burnett v. Grattan,* 468 U.S. 42, 45 n. 3, 104 S. Ct. 2924, 82 L.Ed.2d 36 (1984); *Stack v. Killian,* 96 F.3d 159, 161 (6th Cir. 1996).

The Eighth Amendment does not require perfection on the part of prison officials. *See Cato*, 2020 WL 4193055, at *1 n.1 (internal citations omitted).

For the above reasons, Ibrihim fails to allege facts in the Amended Complaint stating an Eighth Amendment conditions of confinement claim against the SCCC Warden in his individual capacity. That claim is **DISMISSED WITH PREJUDICE**.

### D. Claim Of Deprivation Of Medical Care Against The SCCC Warden In His Individual Capacity

In the Amended Complaint, Ibrihim alleges: (1) he was diagnosed with sleep apnea in March 2018 and was denied access to a sleep apnea machine at the SCCC until July 2022; (2) he is "being denied Linsipril [sic]"; and (3) he suffers from "ailments" described in "over three thousand pages [of Ibrihim's] medical file from The Memphis VA [that] Ibrihim was roundly refused access to." (ECF No. 44 at PageID 230; ECF No. 45 at PageID 236.) None of Ibrihim's allegations is well taken.

First, given that Ibrihim acknowledges the SCCC gave him a sleep apnea machine in July 2022 (*see id.*), his claim for delivery of a sleep apnea machine (*see* ECF No. 16 at PageID 59) is moot. The Court can no longer provide the injunctive relief Ibrihim requests. Ibrihim received the sleep apnea machine he sought. He is now confined at a different facility. (*See* ECF No. 33 at PageID 198 (Ibrihim's notice that he "is currently incarcerated at Tallahatchie Correctional [in] Tutwiler, MS").)

Second, Ibrihim alleges that "[t]he Clinical Director[4] of the SCCC was directly aware of [Ibrihim's] medical needs as of January 13, 2022." (ECF No. 44 at PageID 230; ECF No. 45 at PageID 236.) Ibrihim does not allege facts identifying which of Ibrihim's "over three thousand

---

[4] The Amended Complaint is liberally construed to allege that one person served as the Director and Warden of the SCCC. (*See* ECF No. 1 at PageID 1 (suing "Director/Warden Shelby County Corrections"); ECF No. 44 at PageID 228 (same); ECF No. 45 at PageID 234.)

13

pages" of "medical needs" the "Clinical Director of the SCCC was directly aware of." (*See id*.) Ibrihim also fails to identify the SCCC employee who "denied [Ibrihim's] Linsipril [sic]." (*See id*.) Assuming for purposes of screening the Amended Complaint that "the SCCC Clinical Director" was acting under color of state law, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007) (to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (5th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Here, Ibrihim fails to attribute the behavior about which he complains to the SCCC Warden. For example, Ibrihim does not allege that the SCCC Warden: denied Ibrihim "his Linsipril", was aware that someone at the SCCC was denying that medication, or acquiesced in disregarding Ibrihim's "medical needs." (*See* ECF No. 44 at PageID 230; ECF No. 45 at PageID 236.) When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v, Iqbal*, 556 U.S. 662, 676 (2009).

14

Ibrihim does not plead any actions the SCCC Warden took, or failed to take, that violated Ibrihim's rights. Ibrihim does not state a claim against the SCCC Warden in his individual capacity.

Third, Ibrihim alleges that his "ailments" are described in "over three thousand pages [of his] medical file from The Memphis VA Medical Center." (ECF No. 44 at PageID 230; ECF No. 45 at PageID 236.) However, his factual allegations lack the specificity to demonstrate a sufficiently serious medical condition. (*See id*.) Even if they did, Ibrihim does not allege facts satisfying the subjective prong of the Eighth Amendment. Ibrihim alleges that the "Clinical Director" of the SCCC "was directly aware of [Ibrihim's] medical needs" (*see id*.), but Ibrihim does not allege facts demonstrating that the SCCC Warden: (1) subjectively knew about the health problems described in the "over three thousand pages" of Ibrihim's Memphis VA Medical Center file (*see id*.)[5]; and (2) disregarded an excessive risk those health problems created for Ibrihim. *See Farmer*, 511 U.S. at 834-35, 837; *Wilson*, 501 U.S. at 302-03. The Amended Complaint's factual allegations do not satisfy the Eighth Amendment's subjective prong.

For these reasons, the Amended Complaint's deprivation of medical care claim against the SCCC Warden in his individual capacity is **DISMISSED WITH PREJUDICE** for failure to state a claim to relief.

### E. Claim Of Failure To Receive Legal And Non-Legal Mail On A Daily Basis

In the Amended Complaint, Ibrihim alleges that his "legal mail from the [C]ourt started to be not delivered in March 2022." (ECF No. 44 at PageID 230-31; ECF No. 45 at PageID 236-37.) When Ibrihim grieved the mail delivery issue, he "was told by mail room staff of SCCC I can't do

---

[5] Ibrihim also fails to allege that the SCCC Warden subjectively knew of, and disregarded, Ibrihim's aortic tortuosity, several types of scoliosis, degenerative spinal spurring, heart wall thickening, vocal cord paralysis, glycogenic acathocytosis [sic], hernia, pulmonary vascular congestion, enlarged heart, low lung function, calcified granuloma, and multiple cardiac risks alleged in the Consolidated Complaint. (*See* ECF No. 13 at PageID 46; ECF No. 16 at PageID 55-56 & 59.)

15

anything about it so grievance [sic] all Ibrihim wants." (*Id*.) Ibrihim's allegations are construed as a claim against the SCCC Warden in his individual capacity. (*See id*. (alleging Ibrihim "wr[o]t[e] the Warden" to exhaust Ibrihim's remedies about non-delivery of mail).)

A prisoner's right to receive mail, including legal mail, is protected by the First Amendment. *Muhammad v. Pitcher,* 35 F.3d 1081, 1984–85 (6th Cir. 1994) (citing *Knop v. Johnson,* 977 F.2d 996, 1012 (6th Cir. 1992)) (internal quotation marks omitted); *Pell v. Procunier,* 417 U.S. 817, 822 (1974). Courts have held that a prisoner's right to receive legal mail without interference from prison personnel is entitled to somewhat greater protection than the right to non-legal mail because legal mail has significant impact on the prisoner's access to the courts. *Parrish v. Johnson,* 800 F.2d 600, 604 (6th Cir. 1986). Prison officials may, however, place reasonable restrictions on those rights to maintain security within the institution. The Supreme Court has held that inmate mail may be opened, pursuant to a uniform and evenly applied policy, to guard against contraband coming into a prison. *See Wolff v. McDonnell,* 418 U.S. 539, 574–77 (1974); *see also Sallier v. Brooks*, 343 F.3d 868, 873-74 (6th Cir. 2003) ("[a] prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives").

Here, Ibrihim does not allege that the SCCC Warden was personally involved in Ibrihim's "failure to receive legal mail." (ECF No. 44 at PageID 230-31; ECF No. 45 at PageID 236-37.) As explained *supra*, *t*o establish liability under § 1983 against an individual defendant acting under color of state law, a plaintiff must show that the defendant was "personally involved" in the unconstitutional incident. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981).[6] Ibrihim alleges

---

[6] *See also Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) (a plaintiff must allege facts demonstrating that each defendant he seeks to hold liable, through that defendant's own actions, has violated plaintiff's constitutional rights); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish § 1983 liability"); *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (personal involvement of defendants in alleged constitutional

16

no facts demonstrating the SCCC Warden's personal involvement in Ibrihim's failure to receive legal and non-legal mail on a daily basis.

For these reasons, Ibrihim does not allege facts demonstrating an individual capacity claim to relief against the SCCC Warden for "failure to receive legal mail," and that claim is **DISMISSED WITH PREJUDICE**.

IV. <u>**AMENDMENT UNDER THE PLRA**</u>

Leave to amend under 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 1915A(b)(1) is **DENIED**. The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013)). The Sixth Circuit counsels "liberality" in allowing amendment at the screening stage under the PLRA. *Lucas*, 785 F. App'x at 292. The Sixth Circuit has concluded that, "[i]f it is at all possible that the party ... can ... state a claim for relief, the court should dismiss with leave to amend." *Id.* (internal quotation marks omitted).

In cases where it would not be possible for a plaintiff to amend his complaint to state a claim for relief, leave to amend should not be granted. *See Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001).

---

deprivations is a prerequisite to relief under § 1983 because "each defendant's liability must be assessed individually based on his own actions"); *Miller v. Calhoun Cnty.,* 408 F.3d 803, 817 n. 3 (6th Cir. 2005) (to state a claim against an individual under § 1983, a plaintiff generally must allege the defendant's personal involvement in actions allegedly giving rise to a constitutionally based claim, or the defendant's encouragement or condoning of others' unconstitutional conduct); *Frazier*, 41 F. App'x at 764 (same).

17

Given that Ibrihim has already amended the Consolidated Complaint twice (*see* ECF Nos. 44 & 45) and failed to allege facts stating a claim to relief, further amendment would be futile. Leave to amend the Amended Complaint is **DENIED**.

## V.     APPELLATE ISSUES

Under Federal Rule of Appellate Procedure 24(a) and 28 U.S.C. § 1915(a)(3), the Court must consider whether an appeal by Ibrihim would be taken in good faith. *See Callihan v. Schneider*, 178 F.3d 800, 803–04 (6th Cir. 1999). Under Rule 24(a), if the District Court permits a party to proceed *in forma pauperis*, that party may also proceed on appeal *in forma pauperis* without further authorization unless the District Court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed *in forma pauperis*." Fed. R. App. P. 24(a)(3)(A). If the District Court denies pauper status, the party may move to proceed *in forma pauperis* in the Court of Appeals. Fed. R. App. P. 24(a)(4)–(5).

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether a party appeals in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* "It would be inconsistent for a court to determine that a complaint should be dismissed prior to service on Defendants but has sufficient merit to support an appeal *in forma pauperis*." *DePriest v. Prestress Servs., Inc.*, No. 13-2768-JDT-cgc, 2014 WL 1269933, at *1 (W.D. Tenn. Mar. 27, 2014) (citing *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983)). For the same reasons the Court dismisses the Amended Complaint (ECF Nos. 44 & 45) for failure to state a claim to relief, the Court finds that an appeal would not be taken in good faith. The Court **CERTIFIES**, under Federal Rule of Appellate Procedure 24(a), that any appeal by Ibrihim would not be taken in good faith. The Court **DENIES** leave to proceed on appeal *in forma pauperis*. If Ibrihim appeals, he must pay the full six hundred and five dollar ($605.00)

appellate filing fee or move for leave to appeal *in forma pauperis* with a supporting affidavit in the Sixth Circuit. *See* Fed. R. App. P. 24(a)(5).

## VI.     CONCLUSION

For the reasons explained above:

(1)     The Amended Complaint (ECF Nos. 44 & 45) is **DISMISSED WITH PREJUDICE** for failure to allege facts stating a claim to relief. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1)-(2). Leave to amend is **DENIED**.

(2)     The "three strikes" provision of 28 U.S.C. § 1915(g) prevents a court from granting *in forma pauperis* status to a prisoner who "has, on 3 or more prior occasions, while incarcerated ... brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). For § 1915(g) analysis of Ibrihim's future filings, if any, the Court recommends that the dismissal of this case be treated as a strike pursuant to § 1915(g). *See Simons v. Washington*, 996 F.3d 350 (6th Cir. 2021).

**IT IS SO ORDERED** this _13th_ day of June, 2025.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE